## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW MEXICO

In re:   VAUGHAN COMPANY, REALTORS,                    No. 11-10-10759 SA

      Debtor.

---

JUDITH A. WAGNER, Chapter 11 Trustee
Of the bankruptcy estate of the Vaughan Company,
Realtors,

      Plaintiff,

v.                                                                    Adversary No. 11-1185 J

PATRICIA PRUETT, individually, and
PATRICIA PRUETT, as personal representative
of the estate of William E. Pruett,

      Defendants.

### <u>MEMORANDUM OPINION</u>

     THIS MATTER is before the Court on the Defendants' Motion to Dismiss Pursuant to

Fed.R.Civ.P. 12(b)(1) and (6) ("Motion to Dismiss").   Plaintiff filed a response and a

supplemental response in opposition to the Motion to Dismiss.  *See* Docket Nos. 10 and 19.

This adversary proceeding is one of many adversary proceedings initiated by the Chapter 11

Trustee seeking to recover payments made by Vaughan Company Realtors ("VCR") to parties

who invested in VCR's promissory note program.   Plaintiff Judith Wagner, Chapter 11 Trustee

of the bankruptcy estate of the Vaughan Company Realtors (hereinafter "Plaintiff" or "Trustee")

asserts that VCR operated as a Ponzi scheme.   The Plaintiff seeks to recover certain transfers

made to Patricia Pruett and William E. Pruett[1] under several theories, including avoidance of

---

[1]Patricia Pruett is named as a defendant in this adversary proceeding both individually and in her capacity as
personal representative of the estate of William E. Pruett, now deceased.   For the sake of clarity, the Court will refer
to the alleged transfers as transfers to Patricia Pruett or to William Pruett, with the understanding that the claims

preferential transfers under § 547, and avoidance of transfers under the actual fraud and

constructive fraud provisions of 11 U.S.C. § 548 and applicable state law.  After consideration of

the Motion to Dismiss and the responses thereto, and being otherwise sufficiently informed, the

Court finds that the Motion to Dismiss should be granted, in part, and denied, in part.

<u>APPLCIABLE STANDARDS FOR EVALUATING A MOTION TO DISMISS</u>

A motion to dismiss for failure to state a claim is governed by Rule 12(b)(6),

Fed.R.Civ.P., made applicable to adversary proceedings by Rule 7012, Fed.R.Bankr.P.  In

considering a motion to dismiss under Rule 12(b)(6), the Court accepts as true all well pleaded

facts and evaluates those facts in the light most favorable to the plaintiff.  *Moore v. Guthrie,* 438

F.3d  1036, 1039 (10th Cir. 2006).  The applicable standard for assessing a motion to dismiss for

failure to state a claim under Rule 12(b), Fed.R.Civ.P.  is found in *Bell Atl. Corp. v. Twombly,*

550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) and *Ashcroft v. Iqbal,* 556 U.S. 662, 129

S.Ct. 1937, 173 L.Ed.2d 868 (2009).   Under *Twombly,* in order to survive a motion to dismiss

under Rule 12(b)(6), Fed.R.Civ.P., the complaint must contain enough facts to state a cause of

action that is "plausible on its face." *Twombly,* 550 U.S. at 570.  In other words, the plaintiff

must "nudge [his] claims across the line from conceivable to plausible." *Id.*    "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. 662, 678, 129

S.Ct. 1937, 173 L.Ed.2d 868 (2009)(citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955).  A

pleading that contains only "'labels and conclusions,'" a  "'formulaic recitation of the elements

of a cause of action'" or "'naked assertions' devoid of 'further factual enhancement'" is

insufficient to withstand a motion to dismiss.  *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S.

relating to the alleged transfers to William Pruett are actually asserted against Patricia Pruett, as personal
representative of the estate of William E. Pruett.

at 555 and 557).  Under this standard, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Id.*  The Court thus takes a two-step approach in evaluating a motion to dismiss:  first, the Court accepts as true all well-pled factual allegations, disregarding legal conclusions "'clothed in factual garb'"; second, the Court determines whether the well-pled factual allegations state a plausible claim for relief.  *See In re Tronox, Inc.,* 429 B.R. 73, 90 (Bankr.S.D.N.Y. 2010)(quoting *McHale v. Citibank (In re 1031 Tax Group, LLC),* 420 B.R. 178, 190 (Bankr.S.D.N.Y. 2009) and citing *Iqbal,* 129 S.Ct. at 1950)(stating that "*Twombly* illustrates the two-pronged approach.")).  With these principles in mind, the Court will evaluate the sufficiency of the Complaint in light of the Motion to Dismiss.

## THE CLAIMS CONTAINED IN THE COMPLAINT

The Complaint contains one-hundred fifty-eight numbered paragraphs and consists of twenty separate counts.  Paragraphs 1 through 68 include allegations regarding the nature of the proceeding, jurisdiction and venue, the actions of William Pruett and Patricia Pruett, the alleged transfers, and the fraudulent Ponzi scheme allegedly perpetrated by Douglas Vaughan and his company, VCR.   Paragraphs 69 through 158 incorporate paragraphs 1 through 68 by reference and set forth each claim as a separate count.  The counts are:

| | |
|---|---|
| Count 1 | Turnover and Accounting under 11 U.S.C. § 542 |
| Count 2 | Preferential Transfer under 11 U.S.C. § 547(b) based on alleged transfers to Patricia Pruett made within the 90 day period prior to the filing of the VCR bankruptcy case |
| Count 3 | Actual Fraud under 11 U.S.C. § 548(a)(1) based on alleged transfers to William Pruett made within two years of the date of the filing of the VCR bankruptcy case |

-3-

| | |
|---|---|
| Count 4 | Actual Fraud under 11 U.S.C. § 548(a)(1) based on alleged transfers to Patricia Pruett made within two years of the date of the filing of the VCR bankruptcy case |
| Count 5 | Constructive Fraud under 11 U.S.C. § 548(a)(1)(B) based on alleged transfers to Patricia Pruett made within two years of the date of the filing of the VCR bankruptcy case |
| Count 6 | Constructive Fraud under 11 U.S.C. § 548(a)(1)(B) based on alleged transfers to William Pruett made within two years of the date of the filing of the VCR bankruptcy case |
| Count 7 | Actual Fraud under state law, N.M.S.A. § 56-10-18(A)(1) based on alleged transfers to Patricia Pruett made within four years of the date of the filing of the VCR bankruptcy case |
| Count 8 | Actual Fraud under state law, N.M.S.A. § 56-10-18(A)(1) based on alleged transfers to William Pruett made within four years of the date of the filing of the VCR bankruptcy case |
| Count 9 | Actual Fraud under state law, N.M.S.A. §56-10-18(A)(1) based on alleged transfers to William Pruett made as commissions on referrals |
| Count 10 | Constructive Fraud under state law, N.M.S.A. § 56-10-18(A)(2) based on alleged transfers to Patricia Pruett made within four years of the date of the filing of the VCR bankruptcy case |
| Count 11 | Constructive Fraud under state law, N.M.S.A. § 56-10-18(A)(2) based on alleged transfers to William Pruett made within four years of the date of the filing of the VCR bankruptcy case |
| Count 12 | Constructive Fraud under state law, N.M.S.A. § 56-10-18(A)(2) based on alleged transfers to William Pruett made as commissions on referrals |
| Count 13 | Fraudulent transfer (present creditors) under state law, N.M.S.A. § 56-10-19(A) as to Patricia Pruett |
| Count 14 | Fraudulent transfer (present creditors) under state law, N.M.S.A. §56-10-19(A) as to William Pruett |
| Count 15 | Fraudulent transfer (present creditors) under state law, N.M.S.A. § 56-10-19(A) as to the commissions on referrals paid to William Pruett |
| Count 16 | Fraudulent transfer under state law, N.M.S.A. §56-10-19(B) as to alleged transfers to Patricia Pruett as an insider |

-4-

| Count 17 | Fraudulent transfer under state law, N.M.S.A. § 56-10-19(B) as to alleged transfers to William Pruett as an insider |
|---|---|
| Count 18 | Fraudulent transfer under state law, N.M.S.A. § 56-10-19(B) as to alleged the commissions for referrals paid to William Pruett as an insider |
| Count 19 | Undiscovered fraudulent transfers based on state law |
| Count 20 | Disallowance of Defendants' Claims under 11 U.S.C. § 502(d), or, alternatively, Equitable Subordination of Defendants' Claims under 11 U.S.C. § 510(c) |

## DISCUSSION

The Trustee consents to the dismissal, without prejudice, of her claim for turnover based on 11 U.S.C. § 542[2], and consents to dismissal of her claims for recovery of fraudulent transfers under state law based on the transferee's insider status. Accordingly, the Court will dismiss Counts 1, 16, 17, and 18.[3]

---

[2]Generally, a trustee may not use the turnover provisions of 11 U.S.C. § 542 to recover a fraudulent transfer because the fraudulently transferred property does not become property of the bankruptcy estate until the transfer is avoided and recovered. *See, e.g, Liquidating Trustee of the Amcast Unsecured Creditor Liquidating Trust v. Baker (In re Amcast Indus. Corp.),* 365 B.R. 91, 122 (Bankr.S.D.Ohio 2007)(recognizing that an action for turnover under § 542 "may be used to compel turnover of estate property whose transfer from the estate has been avoided and ownership is no longer in dispute[,]" but, in order to "state a claim for turnover, the plaintiff must allege that the transfer of funds has already been avoided or that the property is otherwise the undisputed property of the estate.")(citations omitted); *Savage & Assocs., P.C. v. BLR Services SAS (In re Teligent, Inc.),* 307 B.R. 744, 751 (Bankr.S.D.N.Y. 2004)(reasoning that, because fraudulently transferred property does not become property of the estate until the property has been recovered, "[t]he trustee cannot compel the turnover of non-estate property under 11 U.S.C. § 542, and circumvent the more restrictive fraudulent transfer claim in the process."). *See also, Las Vegas Casino Lines, LLC v. Abbott (In re Las Vegas Casino Lines, LLC),* 454 B.R. 223, 227 (Bankr.M.D.Fla. 2011)(stating that "[t]urnover pursuant to 11 U.S.C. § 542 is an appropriate cause of action only where title to the tangible property or money due is not in dispute.")(citing *Charter Crude Oil Co. v. Exxon Co., U.S.A. (In re Charter Co.),* 913 F.2d 1575, 1579 (11th Cir. 1990)).

[3]In Plaintiff's Response in Opposition to Defendants' Motion to Dismiss ("First Response"), Plaintiff also consented to dismissal of counts 5, 6, 10, 11, 12, 13, 14 and 15, based on constructive fraudulent transfers. *See* First Response, ¶ 8, p. 5 (Docket No. 10). In Plaintiff's Supplemental Response in Opposition to Defendant's Motion to Dismiss ("Supplemental Response"), Plaintiff no longer consents to dismissal of the counts based on constructive fraudulent transfers. The Court will treat the Supplemental Response as replacing the First Response in its entirety. Defendants did not file a reply to the First Response or to the Supplemental Response.

Case 11-01185-j    Doc 20    Filed 08/02/12    Entered 08/02/12 17:11:08 Page 5 of 26

*Whether Plaintiff's Claims against Patricia Pruett, as Personal Representative of the
Estate of William E. Pruett are time-barred by application of the New Mexico Uniform
Probate Code (Counts 3, 6, 8, 9, 11, 12, 14, 15, 17, 18, 19 and 20)*

Defendants assert that Plaintiff's claims against the Estate of William E. Pruett are time-

barred under N.M.S.A. 1978 § 45-3-803 (Repl. Pamp. 2008) of the New Mexico probate statutes.

That section provides:

> All claims against a decedent's estate that arose before the death of the decedent,
> including claims of the state and any subdivision of the state, whether due or to become
> due, absolute or contingent, liquidated or unliquidated or founded on contract, tort, or
> other legal basis, if not barred earlier by another statute of limitations or non-claims
> statute, are barred against the estate, the personal representative and the heirs and
> devisees of the decedent unless presented within the earlier of the following:
>
> (1) one year after the decedent's death; or
> (2) the time provided by Subsection A of Subsection B of Section 45-3-801 NMSA 1978
>     for all creditors barred by publication.

N.M.S.A. 1978 § 45-3-803 (Repl. Pamp. 2008).

Section 45-3-803(A)(1) serves as a statute of limitations to bar claims against a decedent's estate

or the personal representative of the estate that arise before the death of the decedent unless such

claims are filed within one year after the decedent's death.  *See Macias v. Jaramillo,* 129 N.M.

578, 583, 11 P.3d 153, 158 (Ct. App. 2000)(stating that "[u]nder Section 45-3-803(A)(1), a tort

claim against a decedent's estate that arose before the death of the decedent is barred against the

estate or the personal representative 'unless presented within . . . one year after the decedent's

death.'")(quoting the statute).   Defendants assert that Plaintiff's claims against Patricia Pruett, as

personal representative of the estate of William E. Pruett, are time-barred by application of

N.M.S.A. 1978 § 45-3-8, reasoning that:  1) William E. Pruett died on May 31, 2008;  2) all

claims raised by the Plaintiff against William E. Pruett arose prior to his death; and 3) the

Complaint was filed on October 25, 2011, more than a year after William E. Pruett's death.

-6-

Plaintiff counters that the allegations in the Complaint fail to establish whether all of the claims against William E. Pruett arose prior to his death.

Plaintiff has asserted fraudulent transfer claims under both state law and federal bankruptcy law. A bankruptcy trustee who asserts fraudulent transfer claims under the Bankruptcy Code and applicable state law "is subject to both federal bankruptcy-law limitations periods and the state-law limitations periods applicable to fraudulent-avoidance actions." *Smith v. Am. Founders Fin. Corp.,* 365 B.R. 647, 675 (S.D.Tex. 2007). A cause of action to avoid a fraudulent transfer under 11 U.S.C. § 548 exists solely by virtue of the Bankruptcy Code.[4] Thus, 11 U.S.C. § 546(a), which provides a two-year window following the petition date and a one year period following the appointment of a chapter 11 trustee,[5] is the applicable statute of limitations for actions brought under 11 U.S.C. § 548. *See Floyd v. Option One Mortg. Corp. (In re Supplemental Spot, LLC),* 409 B.R. 187, 197 (Bankr.S.D.Tex. 2009)(stating that 11 U.S.C. § 546(a) is the applicable statute of limitations period for fraudulent transfer actions brought by the trustee under 11 U.S.C. § 548). Plaintiff filed her Complaint within the statute of limitations period provided under 11 U.S.C. § 546(a) applicable to fraudulent transfer claims brought under 11 U.S.C. § 548. Consequently, Plaintiff's claims against William Pruett based

---

[4]*See, Ruby v. Ryan (In re Ryan),* __ B.R. __ , 2012 WL 1144333, *14 n. 7(Bankr.E.D.Va. Apr. 4, 2012)(stating that "an avoidance action under 11 U.S.C. § 548 exists only when a case under Title 11 of the United States Code is pending . . ."); *Malloy v. Bump (In re Arrow Trucking Co.),* 2011 WL 2173680, *2 (Bankr.N.D.Okla. May 27, 2011)(stating that the trustee's claim under §548 "would not exist but for the bankruptcy laws" which created such cause of action).

[5]Section 546(a) provides:

  An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of—
   (1) The later of—
     (A) 2 years after the entry of the order for relief; or
     (B) 1 year after the appointment or election of the first trustee under 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or
   (2) The time the case is closed or dismissed.
11 U.S.C. §546(a).

Case 11-01185-j    Doc 20    Filed 08/02/12    Entered 08/02/12 17:11:08 Page 7 of 26

on 11 U.S.C. § 548 are not time-barred regardless of the statute of limitations period contained in the New Mexico probate code.

Plaintiff's state law causes of action are subject to the statute of limitations period found under New Mexico's probate statutes. Provided that the state law statute of limitations period expired *before* the commencement of the bankruptcy case, the trustee's fraudulent transfer claims brought under applicable state law are time-barred. *See Rosania v. Haligas (In re Dry Wall Supply, Inc.),* 111 B.R. 933, 936 (D.Colo. 1990)("'Since the trustee, under section 544(b), will often be compelled to stand on the rights of a single qualified creditor, it is to be expected that questions of estoppel and the effect of the running of statutes of limitations will arise. The general rule is that section 544(b) confers upon the trustee no greater rights of avoidance than the creditor himself would have . . . . Consequently, if the creditor . . . is barred from recovery because of the running of a statute of limitations *prior to the commencement of the case,* the trustee is likewise rendered impotent.'")(quoting 4 Collier on Bankruptcy § 544.03[2] at 544-21 to –22 (L.King. 15th ed. 1989)(emphasis in original)). However, if the state law statute of limitations period expires *after* the commencement of the bankruptcy case, the Plaintiff's state law claims are limited by 11 U.S.C. § 546(a), which includes state law claims the trustee may assert pursuant to 11 U.S.C. § 544(b).[6] "[A]s long as the state law statute of limitations has not run before the debtor's filing for bankruptcy, the trustee can bring a fraudulent conveyance action as long as he [or she] complies with the provisions of § 546(a)." *Dry Wall Supply,* 111 B.R. at 936.[7]

_____

[6] *See* 11 U.S.C. § 546(a) (which applies to "[a]n action or proceeding under section 544 . . ."). Section 544(b) provides, in relevant part, that "the trustee may avoid a transfer of an interest of the debtor in property . . . that is voidable under applicable state law . . . ."). 11 U.S.C. § 544(b)(1).

[7] *Dry Wall Supply* cites the following cases as being consistent with this position: *Eisenberg v. Feiner (In re Ahead by A Length, Inc.),* 100 B.R. 157, 164 (stating that the cause of action must be "viable under applicable law on the date the bankruptcy petition was filed" in order to successfully sue pursuant to § 544(b)); *Williams v. Browning (In re Silver Wheel Freightlines, Inc.),* 64 B.R. 563, 568 (Bankr.D.Or. 1986); and *L.A. Clarke & Son, Inc. v. Donald (In*

-8-

Neither party directed the Court to N.M.S.A. 1978 § 45-3-803(C) of the New Mexico Uniform Probate Code. That section applies to "claims against a decedent's estate that arise *at or after the death of the decedent.*" N.M.S.A. 1978 § 45-3-803(C)(emphasis added). Section 45-3-803(C) provides:

> All claims against a decedent's estate that arise at or after the death of the decedent, including claims of the state and any subdivision of the state, whether due or become due, absolute or contingent, liquidated or unliquidated or founded on contract, tort or other legal basis are barred against the estate, the personal representative and the heirs and devisees of the decedent unless presented as follows:
>
> > (1) a claim based on a contract with the personal representative within four months after performance by the personal representative is due; or
> > (2) any other claim within the later of four months after it arises or the time specified in Paragraph (1) of this subsection.[8]

If this section is applicable, the trustee must assert her state law cause of action within four months after the claim arises. The applicable look back period for fraudulent transfer claims brought under the New Mexico Uniform Fraudulent Transfer Act is four years. *See* N.M.S.A. 1978 § 56-10-23 (providing that a cause of action must be brought within four years after the date of the transfer). Thus, the look back period as of the date of commencement of the bankruptcy case reaches back to February 22, 2006. This date pre-dates the date William Pruett died. Some of the transfers the Plaintiff seeks to recover may have occurred prior to the death of

---

*re Clarke & Son, Inc.),* 59 B.R. 856, 859 (Bankr.D.C. 1986)(applying the same rationale to a debtor in possession's state law claim brought under § 544(b)). *See also, Lewis v. Delap (In re Delap),* 124 F.3d 216, *2 (10th Cir. 1997)(Table)(stating that "[i]f the state statute of limitations has not run at the time the bankruptcy was filed, the trustee has two additional years to bring an avoidance action.")(citing 11 U.S.C. § 546 and *Dry Wall*); *In re Princeton-New York Investors, Inc.,* 219 B.R. 55, 64-65 (D.N.J. 1998)(finding that state law causes of action brought under 11 U.S.C. § 544 are governed by the limitations period under 11 U.S.C. § 546(a) provided that the state statute of limitations period has not run prior to the bankruptcy petition date.); *Tsai v. Buildings by Jaime, Inc. (In re Buildings by Jamie, Inc.),* 230 B.R. 36, 45 (Bankr.D.N.J. 1998)(same, reasoning that "whether the statutory period has run turns on whether the four year [state law] period lapsed prior to the commencement of the bankruptcy" and concluding that, because "the four year statute of repose under the UFTA had not expired [as of the petition date], section 546 authorized an additional two years to assert a section 544 avoidance claim.").
[8] Subsection (1) is inapplicable. The Plaintiff does not assert any claims against Patricia Pruett as personal representative of the estate based on any contract with Patricia Pruett as personal representative of the estate of William E. Pruett, and has not alleged in the Complaint that any performance by Patricia Pruett as personal representative of the estate of William E. Pruett remained due.

William E. Pruett and some may have occurred after the death of William E. Pruett but prior to the date VCR filed its bankruptcy case.

Mr. Pruett died on May 31, 2008, and VCR commenced its voluntary bankruptcy case on February 22, 2010. To the extent the applicable state law statute of limitations expired before the petition date, Plaintiff's state law fraudulent transfer claims are time-barred. The timely filing of claims against a decedent's estate is mandatory; if such claims are not timely filed, they are barred as a matter of law. *Bowman v. Butler,* 98 N.M. 357, 360, 648 P.2d 815, 818 (Ct. App. 1982)(citing *In re Will of Skarda,* 88 N.M. 130, 537 P.2d 1392 (1975) and *Mater of Estate of Oney,* 95 N.M. 640, 624 P.2d 1037 (Ct.App. 1981)).

However, Plaintiff is correct that the Court cannot determine based solely on the Complaint whether the transfers Plaintiff seeks to avoid occurred after the date of decedent's death and within four months of the petition date in the VCR chapter 11 bankruptcy case. Consequently the Court cannot grant Defendant's motion to dismiss Plaintiff's state law causes of action. But to the extent the transfers at issue preceded William Pruett's death, Plaintiff's state law fraudulent transfer claims against Patricia Pruett, as personal representative of the estate of William Pruett, would be time-barred under N.M.S.A. 1978 § 45-3-8-3(A)(1).[9] Similarly, to the extent the transfers at issue occurred after Mr. Pruett died, but more than four months prior to the date of the petition, Plaintiff's state law fraudulent transfer claims would be time-barred by application of N.M.S.A. 1978 § 45-3-803(C).[10] Other than the claims under 11 U.S.C. §548, only those post-death, pre-petition transfers that occurred within the four month period preceding

---

[9]For those transfers, under N.M.S.A. 1978 § 45-3-803 (Repl. Pamp. 2008), the state law statute of limitations expired pre-petition, on May 31, 2009, one year following Mr. Pruett's death.

[10]Claims against the decedent's estate that arise following the date of death are subject to a four-month statute of limitations period. Thus, if the transfers at issue occurred after Mr. Pruett's death, but more than four months prior to the petition date, the applicable state law statute of limitations period would have expired prior to the filing of the VCR bankruptcy case.

-10-

the filing of VCR's bankruptcy case that Plaintiff seeks to avoid under applicable state law

would be further subject to the extension afforded under 11 U.S.C. § 546(a).

> *Whether Plaintiff's Actual Fraud Claims are plead with sufficient particularity (Counts 3, 4, 7, 8, and 9)*

Pursuant to Rule 9(b), Fed.R.Civ.P., made applicable to adversary proceedings by Rule

7019, Fed.R.Bankr.P. , a party alleging fraud "must state with particularity the circumstances

constituting fraud[,]" though "[m]alice, intent, knowledge and other conditions of a person's

mind may be alleged generally." Rule 9(b), Fed.R.Civ.P. A party asserting a claim for actual

fraud under either 11 U.S.C. § 548(a)(1) or applicable state law is subject to the heightened

pleading requirements of Rule 9(b), Fed.R.Civ.P.[11]

Plaintiff asserts claims based on actual fraud under the Bankruptcy Code and under state

law.[12] The actual fraud provision found in 11 U.S.C. § 548(a)(1) provides, in relevant part:

> The trustee may avoid any transfer . . . that was made or incurred on or within 2
> years before the date of the filing of the petition, if the debtor voluntarily or
> involuntarily –
>> (A) made such transfer  . . . with actual intent to hinder, delay, or defraud
>> any entity to which the debtor was or became, on or after the date that
>> such transfer was made . . . indebted.

11 U.S.C. § 548(a)(1).

Similarly, N.M.S.A. 1978 § 56-10-18(A)(1) includes the requirement that the debtor made the

transfer "with actual intent to hinder, delay or defraud any creditor of the debtor." Defendants

assert that Plaintiff's Complaint falls short of Rule 9(b)'s specificity requirement because

Plaintiff has failed to plead the requisite fraudulent intent with respect to each transfer sought to

---

[11] *See Tronox, Inc.,* 429 B.R. at 92 (stating that the requirements for properly asserting an intentional fraudulent transfer claim fulfill Rule 9(b)'s purpose of providing detailed notice of the alleged fraud claims to defendants); *Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec., LLC),* 454 B.R. 317,  329 (Bankr.S.D.N.Y. 2011)(stating that actual fraudulent transfer claims must meet the heightened pleading requirements of Rule 9(b) whether brought under the Bankruptcy Code or applicable New York fraudulent transfer law); *Angell v. Haveri (In re Caremerica, Inc.),* 409 B.R. 346, 353 (Bankr.E.D.N.C. 2009)("A claim alleging an actual fraudulent transfer under §548 must satisfy the particularity requirement of Rule 9(b).")(citations omitted).
[12] Plaintiff asserts her state law fraudulent transfer claims pursuant to 11 U.S.C. § 544(b)(1).

-11-

be avoided and has failed to connect the allegations against the Defendants to VCR's scheme to

defraud creditors, relying upon *Silverman v. Actrade Capital, Inc. (In re Actrade Fin.*

*Technologies Ltd.),* 337 B.R. 791 (Bankr.S.D.N.Y. 2005).[13]

To satisfy the heightened pleading requirement under Rule 9, Fed.R.Civ.P., a plaintiff

must plead the factual grounds upon which the fraud is based sufficiently to afford the defendant

fair notice of the fraud claim, including, generally, the time, place, and contents of the alleged

fraudulent representation, the identity of the party who made the misrepresentation, and the

consequences of the false representation. *Koch v. Koch Indus., Inc.,* 203 F.3d 1202, 1236 (10th

Cir. 2000)(citation omitted).[14]  Plaintiff correctly points out that fraudulent intent for purposes of

establishing a claim for actual fraud is determined based on the intent of the transferor, in this

instance, VCR, rather than the transferee. *Actrade* is consistent with this view. *See Actrade,* 337

B.R. at 808 (stating that "[c]ases under § 548(a)(1)(A) indicate that it is the intent of the

transferor and not the transferee that is relevant for purposes of pleading a claim for intentional

fraudulent conveyance under the Bankruptcy Code.")(citations omitted).[15]  In addition, when a

fraudulent transfer claim is asserted by the bankruptcy trustee, courts often apply a less stringent

standard when weighing the sufficiency of the complaint, reasoning that "'a trustee is an outsider

to the transaction who must plead fraud from second-hand knowledge.'" *Madoff,* 454 B.R. at

329 (quoting *Nisselson v. Softbank AM Corp., (In re MarketXT Holdings Corp.),* 361 B.R. 369,

---

[13]In *Actrade,* the bankruptcy court looked to the "badges of fraud" that courts routinely rely upon as circumstantial evidence of a debtor's fraudulent intent. *See Actrade,* 337 B.R. at 809 (listing the typical badges of fraud that support an inference of fraudulent intent).  Because the complaint contained "few, if any" factual allegations of the badges of fraud, the *Actrade* court granted the defendant's motion to dismiss plaintiff's claims of intentional fraudulent transfer, with leave to amend. *Actrade,* 337 B.R. at 809-811.

[14]*See also, Madoff,* 454 B.R at 329 (stating that under the Bankruptcy Code or applicable New York fraudulent transfer law, "to state an actual fraudulent transfer claim with Rule 9(b) particularity, a party must ordinarily allege: (1) the property that was conveyed;  (2) the timing and, if applicable, frequency of the transfer; and (3) the consideration paid for the transfer.")(citation omitted).

[15]*See also, Crescent Oil Co., Inc. v. Near (In re Crescent Oil Co., Inc.),* 2011 WL 3878377, *2 (Bankr.D.Kan. Aug. 31, 2011)("A plaintiff need only plead and prove the debtors' intent to defraud.  There is no pleading requirement of fraud on the part of the transferee.").

-12-

395 (Bankr.S.D.N.Y. 2007)(quoting *Picard v. Taylor (In re Park South Sec., LLC),* 326 B.R. 505, 517-518 (Bankr.S.D.N.Y. 2005)(internal quotations omitted)). Nevertheless, many courts require that, even under the less stringent standard applicable to a trustee, to satisfy the particularity requirement of Rule 9 when pleading an actual fraudulent transfer the plaintiff must set forth facts sufficient to apprise the defendant "of the nature of his alleged participation in the fraud,"[16] and at least connect the defendant's actions to the debtor's alleged scheme to defraud.[17]

When there is sufficient evidence of a Ponzi scheme, the "actual intent to defraud" element necessary to recover a transfer as actually fraudulent under either § 548(a)(1)(A) or applicable state law can be established based on a "Ponzi scheme presumption." *See, e.g., Perkins v. Haines*, 661 F.3d 623, 626 (11th Cir. 2011)("With respect to Ponzi schemes, transfers made in furtherance of the scheme are presumed to have been made with the intent to defraud for purposes of recovering the payments under §§ 548(a) and 544(b).")(citations omitted); *In re AFI Holding, Inc.*, 525 F.3d 700, 704 (9th Cir.2008) )("'the mere existence of a Ponzi scheme' is sufficient to establish actual intent under 548(a)(1) or a state's equivalent to that section.")(quoting *Hayes v. Palm Seedlings Partners (In re Agricultural Research and Tech. Group, Inc.),* 916 F.2d 528, 535 (9th Cir. 1990)); *S.E.C. v. Resource Dev. Int'l, LLC*, 487 F.3d 295, 301 (5th Cir. 2007)("In this circuit, proving that IERC operated as a Ponzi scheme establishes the fraudulent intent behind the transfers it made."). *See also Ivey v. Swofford (In re Whitley),* 2012 WL 170135, *4 (Bankr.M.D.N.C. Jan. 19, 2012)(finding that the Ponzi scheme presumption applicable to 11 U.S.C. § 548 should likewise be applied to the North Carolina

---

[16]*Ahead by a Length,* 100 B.R. at 167 (observing that even under the relaxed standard for meeting the particularity requirement under Rule 9, "each defendant is entitled to be apprised of the nature of his alleged participation in the fraud.'")(citation omitted). *See also Pereira v. Grecogas Ltd. (In re Saba Enterprises, Inc.),* 421 B.R. 626, 640-641 (Bankr.S.D.N.Y. 2009)(describing different approaches taken by courts in applying a relaxed standard for plaintiffs with second-hand knowledge of the alleged fraud).

[17]*Crescent Oil,* 2001 WL 3878377 at *2 (requiring that the plaintiff "connect the allegations against the defendant to the debtor's scheme to defraud creditors.").

fraudulent transfer statute).[18]  Under this rule, it is presumed that "'any transfers made in the course of a Ponzi scheme could have been made for no purpose other than to hinder, delay, or defraud creditors.'"  *McHale v. Boulder Capital LLC (In re The 1031 Tax Group, LLC),* 439 B.R. 47, 72 (Bankr.S.D.N.Y. 2010)(quoting *Bear Stearns Sec. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.),* 397 B.R. 1, 8 (S.D.N.Y. 2007)(quoting *Gredd v. Bear Stearns Sec. Corp. (In re Manhattan Fund Ltd.),* 359 B.R. 510, 517-518 (Bankr.S.D.N.Y. 2007)(additional internal quotation marks omitted).[19]

The allegations in the Complaint describing the promissory note program and VCR's method of conducting business and securing new investors plausibly describe a Ponzi scheme.

> A "Ponzi" scheme, as that term is generally used, refers to an investment scheme in which returns to investors are not financed through the success of the underlying business venture, but are taken from principal sums of newly attracted investments.  Typically, investors are promised large returns for their investments.  Initial investors are actually paid the promised returns, which attract additional investors.
>
> *Sender v. Nancy Elizabeth R. Heggland Family Trust (In re Hedged-Investments Associates, Inc.),* 48 F.3d 470, 471 n.2 (10th Cir. 1995)(citing *In re Independent Clearing House Co.,* 41 B.R. 985, 994 n.12 (Bankr.D.Utah 1984)).

---

[18]*See also, Gowan v. The Patriot Group, LLC (In re Dreier LLP),* 452 B.R. 391, 424 (Bankr.S.D.N.Y. 2011)(stating that "[c]ourts have uniformly recognized a presumption of actual intent to defraud on the part of  the transferor in the context of a Ponzi scheme."); *Merrill v. Abbott (In re Independent Clearing House Co.),* 77 B.R. 843, 860 (D.Utah 1987) (stating that "[o]ne can infer an intent to defraud future undertakers from the mere fact that a debtor was running a Ponzi scheme.  Indeed, no other reasonable inference is possible."); *Brandt v. Am. Nat'l Bank and Trust Co. of Chicago(In re Foos),* 188 B.R. 239, 244 (Bankr.N.D.Ill. 1996), *aff'd, in art, and reversed, in part on other grounds by* 1996 WL 563503 (N.D.Ill. 1996)("[W]hen a debtor is operating a Ponzi scheme he knows that he is going to defraud certain investors as sooner or later he will run out of money.  Therefore, when an action is brought to recover payments that were part of the Ponzi scheme it is reasonable to presume an intent to defraud."); *Jobin v. Lalan (In re M & L Bus. Mach. Co., Inc.),* 160 B.R. 851, 857 (Bankr.D.Colo. 1993), *aff'd,* 167 B.R. 219 (D. Colo. 1994)("[I]n a Ponzi scheme, the only inference a court can make is that the debtor had the requisite intent to defraud under § 548(a)(1).").

[19]There are some limits to the Ponzi scheme presumption.  For example, if the debtor operated a legitimate business in addition to engaging in activities with attributes of a Ponzi scheme, the plaintiff may be required to show that the funds plaintiff seeks to recover from investors are traceable to funds the debtor received from earlier investments as part of the Ponzi scheme.  *See Agricultural Research,* 916 F.2d at 536 (finding that the plaintiff sufficiently traced the funds).  Further, the Ponzi scheme presumption may not apply to transfers made before the debtor began operating a Ponzi scheme.  *See also,* Mark A. McDermott, *Ponzi Schemes and the Law of Fraudulent and Preferential Transfers,* 72 Am. Bankr. L. J. 157, 174-175 (1998)(suggesting that the presumption of actual intent to defraud cannot apply in all "Ponzi-type investment programs" and  "should be limited to those situations where it is unmistakable that the debtor purposely orchestrated a scheme which, by its very design, could only serve to defraud investors.").

"The fraud consists of funneling proceeds received from new investors to previous investors in the guise of profits from the alleged business venture, thereby cultivating an illusion that a legitimate profit-making business opportunity exists and inducing further investment." *Wyle v. C.H. Rider & Family (In re United Energy Corp.)*, 944 F.2d 589, 590 n.1 (9th Cir. 1991)(citations omitted). Thus, in a typical Ponzi scheme, (1) the debtor receives funds from investors (which can include parties loaning money to generate a return); (2) investors are promised large returns for their investments; (3) initial investors are actually paid the promised returns, which attracts additional investors; (4) returns to investors are not financed through the success of the underlying business venture, if any, but are taken from principal sums received from newly attracted investments; and (5) the debtor induces investments through an illusion of paying returns to investors from legitimate business activities. For a compilation of factors courts consider to determine whether a Ponzi scheme exists, *see* Kathy Bazoian Phelps and Hon. Steven Rhodes, *The Ponzi Scheme Book: A Legal Resource for Unraveling Ponzi Schemes*, § 2.03[1][b] (2012).

The Complaint generally describes the alleged Ponzi scheme perpetrated by Douglas F. Vaughan through VCR and other entities in which Mr. Vaughan held an interest. For example, Plaintiff alleges that VCR issued promissory notes to investors with high, fixed rates of return that were allegedly secured by a deed of trust on real property, other investments, and Mr. Vaughan's personal wealth, but that, in fact the money received from investors "was not utilized to buy real estate or to further real estate projects as purported, but instead was primarily used to make principal and/or interest payments to other investors and to fund VCR's operating expenses . . . and to enrich [Mr.] Vaughan." *Complaint,* ¶ 21. The Plaintiff also alleges that VCR's expenses "greatly exceeded the cash generated by its business," that VCR "relied entirely on new

-15-

money raised from third parties through the note program," that "VCR used funds deposited from investors to continue operations and pay not redemption proceeds to other investors and to make other transfers," that "because of the "diversion of new investments to pay requests for payment and redemptions from other investors, VCR did not have funds to pay investors on account of their new investments," and that "VCR was able to stay afloat by using the principal invested by some investors to pay other investors the interest and/or principal." *See* Complaint, ¶¶ 17 and 24. Finally, the Complaint recites that in Mr. Vaughan's individual bankruptcy case, the bankruptcy court found that the only way Mr. Vaughan was able to continue his business operations was to obtain additional "'funds from investors who were promised high rates of return on their investments. The funds invested were not utilized as represented; rather they went to pay the high rates of returns to the prior investors. This is a textbook example of a Ponzi scheme.'" *Complaint,* ¶ 27 (quoting Memorandum Opinion on U.S. Trustee's Motion to Appoint a Chapter 11 Trustee and Motion to Convert Case to Chapter 7, filed in Case No. 7-10-10763 JA as Docket No. 343). These allegations are sufficient to set forth a plausible claim that VCR operated its business as a Ponzi scheme. Thus, the Complaint contains factual allegations sufficient to allege "actual intent to defraud" under the Ponzi scheme presumption.

The allegations in the complaint also sufficiently connect the Defendants to the alleged Ponzi scheme. The Complaint identifies each of the alleged investments the Defendants made, and the alleged rate of return for each investment. *See* Complaint ¶ 30 and 46. The Complaint alleges that two investments of $50,000.00 each had an interest rate of 20%, and that Patricia Pruett's investment of $200,000 in January of 2007 had an interest rate of 25%. *See* Complaint ¶¶ 30 and 46. As for the transfers Plaintiff seeks to recover, the Complaint identifies the total amounts that Plaintiff alleges were transferred to Defendants during each look-back period.

-16-

Each count in the Complaint incorporates by reference all of the previous numbered allegations in the Complaint. Absent such incorporation by reference, the Court agrees that the allegations in each count, including the counts based on actual fraud, are insufficient to withstand a motion to dismiss under the *Iqbal* standard.[20] However, the allegations, including those incorporated by reference into each Count of the Complaint, sufficiently connect the Defendants to the Ponzi scheme by specifically identifying the investments they made which were a part of the "promissory note program" and the payments made to Defendants. The Court, therefore, concludes that the Complaint satisfies Rule 9, Fed.R.Civ.P. because the allegations sufficiently provided defendants with "'fair notice of plaintiff's claims and the factual background upon which [they] are based . . .'" *Koch v. Koch Indus.,* 203 F.3d at 1236 (quoting *Lawrence Nat'l Bank v. Edmonds (In re Edmonds),* 924 F.2d 176, 180 (10th Cir. 1991)). The Court will deny the Motion to Dismiss Plaintiff's actual fraud claims.

### *Whether Plaintiff's Constructive Fraud Claims Should Be Dismissed based on receipt of "reasonably equivalent value" (Counts 5, 6, 10, 11, 12, 13, 14, 16, 17)*

Defendants also seek to dismiss Plaintiff's constructive fraud claims, arguing that, because the amounts the Plaintiff seeks to recover are less than the amounts Defendants initially invested, Defendants provided reasonably equivalent value in exchange for what they received as a matter of law. Constructive fraud under 11 U.S.C. § 548(a)(1)(B) requires the plaintiff to establish that the debtor "received less than a reasonably equivalent value in exchange for the

---

[20] For example, Count 4, absent the incorporation by reference of other parts of the Complaint, would consist of the following allegations:
- The Patricia Pruett Two Year Transfers were made on or within two years before the Petition date
- The Patricia Pruett Two Year Transfers were made by VCR with the actual intent to hinder, delay and defraud some or all of VCR's then existing or future creditors
- The Patricia Pruett Two Year Transfers constitute a fraudulent transfer avoidable by the Trustee pursuant to § 548(a)(1)(A) of the Bankruptcy Code and recoverable from P. Pruett pursuant to section 550(a).

Complaint, ¶¶ 86 – 88.

These allegations constitute a formulaic recitation of the statutory elements under 11 U.S.C. § 548(a)(1)(A) and are completely devoid of any factual descriptions of the actions that constitute the alleged fraud.

transfer." 11 U.S.C. § 548(a)(1)(B)(i).[21]  Similarly, the constructive fraud provisions under the New Mexico Fraudulent Transfer Act contain a requirement that the debtor made the transfer "without receiving a reasonably equivalent value in exchange for the transfer."  N.M.S.A. 1978 § 56-10-18(A)(2).   The Plaintiff bears the burden of demonstrating that the transferor received less than a reasonably equivalent value in exchange for the transfer.[22]

Defendants' sole argument is that the Debtor received reasonably equivalent value in exchange for the transfers because they received less than their initial investments.  Defendants' argument is premised on their assertion that that they were victims of the alleged Ponzi scheme; therefore, they have a potential restitution claim against VCR to recover the amount of their investment.    In *Independent Clearing House*, the court concluded that investors in a Ponzi scheme provided reasonably equivalent value to the debtor in exchange for the transfers to the extent the transfers did not exceed the initial investment.   *Independent Clearing House,* 77 B.R. at 857.   In reaching this determination, the court reasoned that

> [f]rom the time a defendant entrusted his money to the debtors, he had a claim against the debtors for the return of his money.  We believe that the Code's definition of "debt" and its related terms is broad enough to cover the debtors' obligation to return a defendant's principal undertaking, whether that obligation was based on the contract between the debtors and the defendant or was based on the defendant's right to restitution.

> *Independent Clearing House,* 77 B.R. at 857.

---

[21]To prevail on a constructive fraud claim under 11 U.S.C. § 548(a)(1)(B), the plaintiff must also demonstrate harm to creditors or other parties in interest by satisfying one of three alternative subsections under 11 U.S.C. § 548(a)(1)(B)(ii).   The Defendants do not seek dismissal on grounds that the Plaintiff has failed to allege the elements required to satisfy 11 U.S.C. § 548(a)(1)(B)(ii).

[22]*See Parks v. Persels and Associates, LLC (In re Kinderknecht),* 470 B.R. 149, 169 (Bankr.D.Kan. 2012)(stating that the Chapter 7 trustee, as the party seeking to set aside a transfer as constructively fraudulent, bears the burden of proving that the debtor received less than a reasonably equivalent value); *Redmond v. Progressive Corp.  (In re Brooke Corp.),* 469 B.R. 68, 70 (D.Kan. 2012)("The Trustee bears the burden to show that the debtor received less than REV [reasonably equivalent value].")(citation omitted); *Official Committee of Unsecured Creditors v. Western United Life Assurance Co. (In re Tri-Valley Distributing, Inc.),* 452 B.R. 837, 845 (Bankr.D.Utah 2011)(under Utah's fraudulent conveyance statutes, plaintiff must demonstrate that the transferor did not receive reasonably equivalent value).

The court reasoned further that "to the extent a transfer merely repaid a defendant's undertaking, the debtor received not only a 'reasonably equivalent value' but the exact same value – dollar for dollar." *Id.* The Tenth Circuit has taken a similar approach to reasonably equivalent value in the context of a Ponzi scheme in *Jobin v. McKay (In re M & L Business Machine Co.),* 84 F.3d 1330 (10th Cir. 1996).

In *McKay,* the Tenth Circuit began its analysis by examining the definitions set forth in the Bankruptcy Code. 84 F.3d at 1340. "Value" is defined under 11 U.S.C. § 548(d)(2)(A) as "property, or satisfaction or securing of a present or antecedent debt of the debtor." 11 U.S.C. § 548(d)(2)(A). "Debt" is defined as "liability on a claim," and "claim" is broadly defined as the "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, legal, equitable , secured, or unsecured," and includes the "right to an equitable remedy for breach of performance." 11 U.S.C. § 101(5) and (12). Reasonably equivalent value can take the form of a reduction in the amount of a claim by the transferee against the transferor resulting from the transferee's receipt of the payment. *McKay*, 83 F3d at 1341. A defrauded investor's contractual right to the return of its principal or restitution claim could, thus, qualify as an antecedent debt under these definitional Code sections. *See McKay,* 84 F.3d at 1341. Whether the transferee had such a claim and whether the payment reduced the amount of the claim is governed by applicable state law. *Id.*

The Defendants allege the Debtor received reasonably equivalent value in exchange for its transfers to Defendants because the transfers reduced the amount of the Defendants' claim of restitution against the Debtor. New Mexico courts recognize that restitution is an equitable remedy, and often look to the Restatements for guidance in considering restitution claims.[23]

---

[23]*See, e.g., Eker Bros., Inc. v. Rehders,* 150 N.M. 542, 263 P.3d 319, 321-323 (Ct.App. 2011)(acknowledging that "[t]traditionally, restitution is thought of as an equitable remedy" and applying the Restatement (Second) of

-19-

Consistent with the Restatement (Third) of Restitution, an investor in a Ponzi scheme who had no actual knowledge and did not participate in the fraud is entitled to retain distributions up to the amount of their initial investment. *See* Restatement (Third) Restitution § 37(2) and (3).[24] Under the Restatement, a party is entitled to restitution to recover benefits conferred when a contractual obligation to the party is unenforceable as against public policy provided restitution would not defeat or frustrate the policy rendering the contract unenforceable, and the party asserting a claim for restitution has not acted inequitably. *Id.*[25] Retention of withdrawals or distributions up to the amount of the investment would not defeat or frustrate the public policy rendering a promissory note issued in furtherance of a Ponzi scheme void as against public

_____

Contracts § 374 regarding restitution in favor of party in breach to award the value of benefits conferred in excess of the loss caused by that party's own breach of the contract); *Romero v. Bank of the Southwest,* 135 N.M.1, 83 P.3d 288 (Ct.App. 2003)(citing Restatement (Second) of Contract § 371 (1981) for the measure of the amount of a restitution claim); *Allsup v. Space,* 69 N.M. 353, 362, 367 P.2d 531, 537 (1961)(stating that a case involving restitution is "of an equitable nature."); *Van Sickle v. Keck,* 42 N.M. 450, 81 P.2d 707 (1938)(citing the Restatements on Contracts and Restitution in connection with claim to impose equitable lien on real estate).  *See also, Wessel v. City of Albuquerque,* 463 F.3d 1138 (10th Cir. 2006)(construing New Mexico law and citing the Restatement (Second) of Contracts and the draft Restatement (Third) of Restitution in connection with a restitution claim on a contract later voided as against public policy); *Reynolds v. Slaughter,* 541 F.2d 254 (10th Cir. 1976)(relying upon the Restatement of Restitution and the Restatement of Contracts in construing New Mexico law).

[24] Section 32 of the Restatement (Third) of Restitution provides, in relevant part:
    A person who renders performance under an agreement that is illegal or otherwise unenforceable for reasons of public policy may obtain restitution from the recipient under the following rules:
        . . . .
        (2)  Restitution will also be allowed as necessary to prevent unjust enrichment, if the allowance of restitution will not defeat or frustrate the policy of the underlying prohibition.  There is no unjust enrichment if the claimant receives the counterperformance specified by the parties' unenforceable agreement.
        (3)  Restitution will be denied, notwithstanding the enrichment of the defendant at the claimant's expense, if a claim under subsection (2) is foreclosed by the claimant's inequitable conduct.
    Restatement (Third) of Restitution §32(2) and (3).

[25] *See also,* Restatement (Third) Restitution §32 *Comments c. and d.* (explaining that restitution is available "to the extent that the consideration of the claim does not defeat the policy of the underlying prohibition" but that the court may deny restitution "if the court concludes that the claimant's inequitable conduct in the matter under consideration precludes the assertion of a claim based on unjust enrichment."  "[A] party guilty of inequitable conduct in the underlying transaction may on that account be denied a claim based on unjust enrichment."); *Wessel v. City of Albuquerque,* 463 F.3d at 1147 (stating that, under the proposed draft of the Restatement (Third) of Restitution, § 32, it may be appropriate to consider "(1) the nature of the illegality; (2) the extent of the party's culpability; (3) whether the illegal conduct was central or merely tangential to the performance of the contract; and (4) the strength of the deterrent effect of the decision" in assessing whether restitution might nevertheless be appropriate in connection with a contract later voided for public policy reasons).

-20-

policy.[26]   However, because a claim for restitution is equitable in nature, "investors who have knowledge of, and help perpetuate, a fraud should not be permitted to benefit in the form of restitution." *Picard v. Merkin (In re Bernard L. Madoff Inv. Securities, LLC),* 440 B.R. 243, 262 (Bankr.S.D.N.Y. 2010)(applying New York law).[27]  Similarly, in evaluating "reasonably equivalent value" under 11 U.S.C. § 548(a)(2) in light of a defendant's potential claim for restitution, the Tenth Circuit, applying Colorado law, determined that a transferee without actual knowledge of the Ponzi had a restitution claim at the time of transfer even if the transferee was negligent and unreasonable in relying upon the misrepresentation.  *McKay*, 84 F3d at 1341-42. Thus, the defendant without actual knowledge of the Ponzi scheme provided reasonably equivalent value through a reduction in the amount of his claim for restitution sufficient to defeat the claim to recover the transfer as constructively fraudulent under § 11 U.S.C. § 548(a)(2).  *Id.* at 1341 - 1342.

   Here, Plaintiff has alleged that Defendants knew or should have known that the VCR promissory note program was a fraudulent scheme and that the Defendants willingly turned a blind eye to several red flags that would indicate that VCR was perpetrating fraud.  *See*

---

[26]*See McKay,* 84 F.3d at 1341-42 (discussing reasonably equivalent value in terms of defendant's restitution claim); *Perkins v. Haines,* 661 F.3d at 627 (stating that the general rule for Ponzi schemes "is that a defrauded investor gives 'value' to the Debtor in exchange for a return of the principal amount of the investment, but not as to any payments in excess of principal.")(citation omitted);  *Donell v. Kowell,* 533 F.3d 762, 772 (9th Cir. 2008)(reasoning that investors are permitted to retain up to the value of their initial investment "because they have claims for restitution . . . against the debtor  that operated the scheme . . .")

[27]*See also, United Energy Corp.,* 944 F.2d at 596 n.7 (explaining that by "recognizing these claims for rescission and restitution, we assume that the investors had no knowledge of the fraud the debtors were perpetrating. If investments were made with culpable knowledge, all subsequent payments made to such investors . . . would be avoidable under section 548(a)(2), regardless of the amount invested, because the debtors would not have exchanged a reasonably equivalent value for the payments.")(citation omitted); Mark A. McDermott, *Ponzi Schemes and the Law of Fraudulent and Preferential Transfers,* 72 Am. Bankr. Law Journal, 157, 167 (1998)(explaining that under *McKay* and in the context of evaluating reasonably equivalent value under a claim for constructive fraud , "courts measure the investor's good faith by a subjective standard, i.e., by determining what the investor actually knew.").
   In contrast, the good faith defense under 11 U.S.C. § 548(c) to claims for actual fraud brought under 11 U.S.C. § 548(a), absent a defendant's actual knowledge of the fraud, is measured by an objective standard.  *See McKay,* 84 F.3d at 1338 (concluding "that good faith under § 548(c) should be measured objectively and that 'if the circumstances would place a reasonable person on inquiry of a debtor's fraudulent purpose and a *diligent* inquiry would have discovered the fraudulent purpose, then the transfer is fraudulent.'")(quoting *Jobin, v. McKay (In re M & L Bus. Mach. Co., Inc.),* 164 B.R. 657,  661 (D. Colo. 1994)(quoting *Agricultural  Research,* 916 F.2d at 536)).

Complaint, ¶¶ 54 – 56, 62.  Plaintiffs further allege that such red flags became commonly known

by the public at large following the arrest of Bernard Madoff in 2008, and that Defendants

nevertheless continued to invest in VCR's note program despite the fact that the interest rates the

Defendants received were "unrealistically high."  *See* Complaint ¶ 53.  These allegations are

sufficient to state a plausible claim that Defendants had actual knowledge of the fraud and

subjectively knew that they were participating in a fraudulent scheme.  Defendants may, in fact,

have a claim for restitution that was partially satisfied when they received distributions.  But if

the Defendants had subjective knowledge that they were participating in the fraudulent scheme,

they would be precluded from asserting a claim for restitution.   Because the Court cannot

determine Defendants' subjective knowledge at this stage in the proceeding, it is premature for

the Court to dismiss the Plaintiff's claims for constructive fraud.  The Court will, therefore, deny

the Defendants' request to dismiss Plaintiff's constructive fraud claims.[28]

---

[28]*But cf.  Whitley,* 2012 WL 170135 at * 7 (dismissing plaintiff's constructive fraud claims under § 548(a)(1)(B) and applicable state law because the allegations in the complaint established that the defendant's principal investment exceeded the amount of the transfers, concluding that "Plaintiff's complaint is fatally deficient because it affirmatively shows that reasonably equivalent value was received for each transfer received by the Defendant . . .").

       Even if the Court were to dismiss Plaintiff's constructive fraud claims based on the theory that an investor in a Ponzi scheme is always entitled to recover their initial investment, such that "net losers" are immune from constructive fraud claims regardless of whether they subjectively knew about the improper scheme, Plaintiff's claims based on actual fraud would remain.  *See Fisher v. Sellis (In re Lake States Commodities, Inc.),* 253 B.R. 866, 879  n.9  (noting that, when "a complaint contains counts under both subsections of Code § 548(a)(1), victory on the constructive fraud counts may be of little practical value to the transferee, since a trustee may recover the full amount of a transfer if the debtor made the transfer with actual intent to defraud.  In that scenario, the transferee will only avoid liability if it can establish good faith as measured by an objective standard.")(citing *Jobin v. Ripley (In re M & L Bus. Mach. Co., Inc.),* 198 B.R 800, 809 n.3)(D.Colo. 1996)). *See also, Donell v. Kowell,* 533 F.3d at  772 n. 4 )(explaining that "[u]nder the actual fraud theory, the good faith losing investor is technically still liable even if his net transactions are negative, because even payments that total less than the amount of that investor's initial outlay were made  '[w]ith actual intent to hinder, delay , or defraud [a] creditor of the debtor[,]'" but that an innocent investor retains a "good faith" defense which permits the investor to retain repayment of the initial investment) )(quoting Cal.Civ. Code. §3439.04(a)(1));  *Independent Clearing House,* 77 B.R. at 859 (explaining that "[a] transfer made for reasonably equivalent value can still be fraudulent and hence avoidable if it was made 'with actual intent to hinder, delay, or defraud' persons to whom the debtor was or later became indebted.").

*Whether Plaintiff's State Law Claims Should be Dismissed based on Jurisdictional Defects in light of the Supreme Court's decision in Stern v. Marshall (Counts 7, 8, 9, 10, 11, 12, 13 14, 15, 16, 17 and 19[29]*

Defendants' Motion to Dismiss includes an argument that jurisdictional impediments to Plaintiff's causes of action warrant dismissal under the Supreme Court's decisions in *Stern v. Marshall,* __ U.S. __, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011) and *Granfinanciara S.A. v. Nordberg,* 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989). Defendants "incorporate by reference" the jurisdictional arguments set forth in *Wagner v. Pickett,* Adversary No. 11-1126, but fail to articulate the jurisdictional arguments in their Motion to Dismiss. The Court declines to address Defendants' jurisdictional arguments because the Defendants have failed to properly raise or otherwise explain their jurisdictional arguments. Consequently, the Court will deny the Motion to Dismiss Counts 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, and 17 and 19 to the extent the motion is premised on an unarticulated lack of jurisdiction argument premised on *Stern v. Marshall*.[30] Furthermore, any jurisdictional defect implicated by *Stern v. Marshall* cannot serve as grounds for dismissal; the application of *Stern v. Marshall* merely affects whether certain claims require a final decision rendered by the District Court rather than this Court.

Even if *Stern v. Marshall* were grounds to require withdrawal of the reference of this Adversary Proceeding so that a final judgment can be entered by the District Court, the Court notes that Plaintiff consents to the withdrawal of the reference of this adversary proceeding. *See Response,* at p. 19.

---

[29] Defendants' Motion to Dismiss specifically limited its jurisdictional claims to Counts 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, and 19. *See* Motion to Dismiss, p. 11.

[30] In *Stern v. Marshall,* the Supreme Court held in a 5-4 decision that the statutory grant of authority to bankruptcy judges set forth in 28 U.S.C. § 157(b)(2)(C) to hear and determine "counterclaims by the estate against persons filing claims against the estate" exceeds the limits of Article III of the Constitution where 1) the counterclaim by the estate seeks a monetary recovery from a creditor to augment the estate; 2) the counterclaim is based in tort governed wholly by state law; 3) resolution of the counterclaim is not necessary to resolve the allowance or disallowance of the claim itself; and 4) the creditor did not consent to the bankruptcy court determining the counterclaim. *Stern v. Marshall,* 131 S.Ct. at 2620.

Finally, Plaintiff points out that the Defendants have not sought dismissal of Count 2, alleging that transfers to Patricia Pruett made within ninety days of the date of the filing of the VCR bankruptcy case should be recovered as a preference under 11 U.S.C. § 547, or Count 20 as it relates to Patricia Pruett. Plaintiff asserts that such failure should be deemed an admission on the part of Defendants as to those claims such that Plaintiff should be entitled to the relief requested in Counts 2 and 20 by default.

Rule 12(a)(4)(A) of the Federal Rules of Civil procedure, made applicable to this adversary proceeding by Rule 7012, Fed.R.Bankr.P., provides:

> Unless the court sets a different time, serving a motion under this rule [Rule 12] alters these periods as follows: (A) if the court denies the motion or postpones its disposition until trial, the responsive pleading must be served within 14 days after notice of the court's action.

The Plaintiff apparently is arguing that Rule 12(a)(4)(A) does not apply where, as here, the Defendant's Motion to Dismiss, if granted, would only partially dispose of the claims asserted in the complaint. The large majority of courts addressing this issue have held that when a defendant timely files a motion to dismiss under Rule 12(b)(6), Fed.R.Civ.P., Rule 12(a)(4)(A) extends the time to file an answer as to all claims, including those not addressed by the motion to dismiss. *See Talbot v. Sentinel Ins. Co., Ltd*., 2012 WL 1068763, *4 (D.Nev. Mar. 29, 2012) (surveying the case law) and holding that "a pending motion to dismiss, although it may only address some of the claims alleged, tolls the time to respond to all claims under Rule 12(a)(4)."[31] This Court agrees with that holding.

---

[31]The *Talbot* court cites the following cases in support of the proposition that a party does not need to file an answer while a motion to dismiss as to some but not claims is pending:

> *ThermoLife Intern., LLC v. Gaspari Nutrition, Inc.,* 2011 WL 6296833 (D.Ariz.)(even when a pending motion to dismiss may only address some of the alleged claims, the motion to dismiss tolls the time to respond to all claims under Rule 12(a)(4)); *Gortat v. Capala Bros., Inc.*, 257 F.R.D. 353, 366 (E.D.N.Y.2009) (finding that requiring a party to reply to claims not the subject of a partial motion to dismiss would result in a "procedural thicket of piecemeal answers that would poorly serve judicial

Defendants filed a timely motion under Rule 12(b)(6). Pursuant to Rule 12(a)(4)(A), Defendants are not required to file a responsive pleading that addresses the claims not addressed by their Motion to Dismiss until 14 days after the Court rules on the Motion. Plaintiff is not entitled to the relief requested in Counts 2 and 20 by default.

Based on the foregoing, the Court will deny the Defendants' Motion to Dismiss. The Court will enter a separate order consistent with this Memorandum Opinion.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: August 2, 2012

---

economy"); *Kent v. Green*, 2008 WL 150060 (D.Colo.) (finding that partially dispositive Rule 12 motion altered responsive pleading date under Rule 12(a)(4); *Beaulieu v. Board of Trustees of University of West Florida*, 2007 WL 2020161 (N.D.Fla.)(holding that a partial motion to dismiss "automatically extends" the time to file a responsive pleading on unchallenged claims pursuant to Rule 12(a)(4)); *Shah v. KIK Intern. LLC*, 2007 WL 1876449 (N.D.Ind.) (holding that Rule 12(a)(4) applies "by operation of law" to claims not challenged in partial motion to dismiss); *Bertaut v. Parish of Jefferson*, 2002 WL 31528468 (E.D.La.)("[e]ven the filing of a partial motion to dismiss extends the defendant's time to answer the entire complaint" under Rule 12(a)(4)); *Finnegan v. University of Rochester Medical Center*, 180 F.R.D. 247, 250 (W.D.N.Y.1998) (holding that the plain language of Rule 12(a)(4) contemplates suspending the time to response to the entire complaint, not just to claims that are the subject of a partial motion to dismiss*); Oil Express Nat'l, Inc. v. D'Alessandro*, 173 F.R.D. 219, 220 (N.D.Ill.1997) ("The majority of courts that have considered this question ... have concluded that a party does not need to file an answer while a partial motion to dismiss is pending"); *Brocksopp Engineering, Inc. v. Bach–Simpson Ltd.*, 136 F.R.D. 485, 486–87 (E.D.Wis.1991) (holding that requiring an answer to unchallenged claims would result in duplicative sets of pleadings in the event the 12(b) motion is denied and cause confusion).

*Talbot*, 2012 WL 1068763 at *4. *But see Gerlach v. Michigan Bell Telephone Co*., 448 F.Supp. 1168, 1174 (E.D.Mich.1978)(observing that Rule 12(b) is silent regarding whether the filing of a motion to dismiss under Rule 12(b) alters the time within which the party moving to dismiss must respond to claims in the complaint that are not addressed in the motion and stating that, because [s]eparate counts are, by definition, independent bases for a lawsuit . . . the parties are responsible to proceed with litigation on those counts which are not challenged by a motion under F.R.C.P. 12(b).").

-25-

COPY TO:

**James A. Askew**
**Edward A  Mazel**
**Aletheia Vadin Pamela Allen**
Attorneys for Plaintiff
Arland & Associates LLC
201 Third St NW Ste 505
Albuquerque, NM 87102

**R Trey Arvizu, III**
Attorney for Defendant
PO Box 1479
Las Cruces, NM 88004-1479